UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JASON BARRETT<br><br>Plaintiff,<br><br>v.<br><br>LEVON ALLEN, *in his official and individual capacity,*<br><br>Defendant. | No.: ________________ |

**VERIFIED COMPLAINT**
**FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND NOMINAL DAMAGES**

COME NOW Plaintiff, Jason Barrett (hereinafter, "Plaintiff,"), who, by and through counsel, brings this complaint pursuant to 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution, for equitable relief and nominal damages, for the violation of Plaintiffs' First Amendment Rights.

## INTRODUCTION

1. Defendant Levon Allen ("Defendant Allen" or "Defendant") misappropriated public funds for the benefit of his ego and sense of importance: he redirected public funds to enjoy a "security detail" during a jog: rather than protecting the public or performing critical duties, deputies

were paid to assist Defendant Allen in his personal exercise regime. Defendant was, naturally, mortified and angered when it became public that he had acted in this manner.

2. Plaintiff learned of this waste of resources, and shared his views with others utilizing private phones on personal time to discuss the maladministration, abuse of office, and misuse of public funds—all issues of utmost public concern.

3. This eventually came to the attention of a political opponent of the Defendant's and, thus, was made known to the public at large. Defendant Allen, instead of upholding the First Amendment and stomaching well-founded criticism he found personally distasteful, manipulated the powers and apparatus of his office to seek out and retaliate against those who spoke on an issue of public concern as private citizens, including Plaintiff.

4. This was no more than a grown man, taking offense to speech criticizing his abuse of public trust and using the significant resources of his office to further abuse his powers and punish that speech: a man tasked with protecting the First Amendment decided to vindicate his own wounded pride rather than protect the Constitution. To that end, Defendant Allen initiated a pretextual Internal Affairs investigation aimed solely at discovering, and punishing, speakers due to the content of their speech.

## PARTIES

5. Jason Barrett is a citizen of Henry County, Georgia, and resides within the district. Mr. Barrett has nearly two decades of law enforcement experience, including more than twelve years of service with Clayton County, and specifically three years of service with the Clayton County Sheriff's Office. At the time of these events, he held a command staff position within the Sheriff's Office, with the rank of Captain, and was concerned with law enforcement activities within Clayton County.

6. Mr. Allen is the Sheriff of Clayton County, Georgia. On information and belief, Mr. Allen is a citizen of Clayton County and resides within the district. When served, on information and belief, he will be subject to the jurisdiction of this Court.

7. As the Sheriff of Clayton County, Mr. Allen controlled the Internal Affairs investigation against the Plaintiff as well as being the final decision maker on disciplinary matters. As Sheriff, he sets all policies and practices of the Sheriff's Office and had final say over all relevant actions described herein, including retaliatory disciplinary decisions.

8. At all times relevant to this Complaint, Mr. Allen was acting under color of law.

## JURISDICTION AND VENUE

9. This Court may properly exercise jurisdiction over this complaint pursuant to 28 U.S.C. §§1331, 1343(a), in that it is a civil rights matter brought under 42 U.S.C. § 1983.

10. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

11. Venue lies in this Court under 28 U.S.C. § 1391 because the events giving rise to the Plaintiff's claims arose in this district.

## FACTS

12. On or about May 15th, Plaintiff received on his county issued cell phone a text message in a group chat consisting of various members of the Clayton County Sheriff's Office command staff and Defendant Allen, wherein Defendant Allen texted "I need a Deputy to pull security while I run the perimeter."

13. Defendant's run was in furtherance of his personal exercise and not related to his duties as Sheriff.

14. Complying with Defendant's directive required the allocation of taxpayer resources and funds to Defendant's personal use, and the diversion of public safety personnel away from their official duties to attend the personal needs of the Defendant and to the detriment of the public's safety.

15. Plaintiff made a screenshot of the text and forwarded the same to his personal cell phone.

16. Plaintiff later, on or about the same date, forwarded the screenshot from his personal cell phone while off-duty to a personal group chat that consisted of the Plaintiff, Alvin Jones, Franklin Wilson, John Norrod, and John Gossart, with the message "Detail for a run?" and included a 'laughing face' emoji. *See* Exhibit A.

17. Jones and Wilson were employees of the Clayton County Sheriff's Office, while John Norrod and John Gossart were not.

18. John Norrod and John Gossart were, however, former employees of the Clayton County Sheriff's Office, and familiar with Defendant Allen.

19. Plaintiff believed the request for on-duty deputies to run with the Defendant for "security" while he exercised was a waste of tax-payer resources, prompting his text message to the group that included the screenshot of the Defendant's request.

20. Plaintiff further responded in the text string that he "used to watch Chief Roberts run by himself every day," as further commentary concerning the fiduciary irresponsibility of the Defendant's request.

21. Plaintiff's normal duties within the Sheriff's Office consisted of supervision of specialized patrol units operating in the field, and did not include

responsibility for the investigation, reporting, or prosecution of public corruption or malfeasance.

22. The screen shots in question eventually came into the possession of Cornell Madison, a candidate for the office of Clayton County Sheriff.

23. In a televised meeting of the Clayton County Board of Commissioners occurring on May 19, 2026, Madison addressed the Board of Commissioners in relation to the Sheriff's Office overtime budget, a matter of clear public concern.

24. To illustrate his viewpoint concerning wasteful spending by the Sheriff's Office, Madison referenced the May 15th text message by the Defendant requesting on-duty deputies to provide security while he exercised, and further referenced a purported response from a party unknown to the Plaintiff and not identified by Madison that indicated that Sheriff's Office personnel were taken from the performance of their official duties to meet the directive of the Defendant.

25. Plaintiff was not personally acquainted with Madison, nor did he provide screenshots of the referenced text messages, or any other information whatsoever, to Madison.

26. On information and belief, Defendant Allen was angered by this protected speech and ordered an internal affairs investigation to, reportedly, 'find the leak.'

27. On the afternoon of June 8th, Plaintiff was called to meet with Chief Deputy Jonathan Green without prior notice or context concerning the nature of the meeting.

28. Upon arriving for the meeting, Plaintiff was met by Chief Deputy Green, along with Jeffrey Mann, counsel for Defendant Allen, and Major LJ Roscoe.

29. At the beginning of the meeting, Major LJ Roscoe indicated to the Plaintiff he was being interviewed concerning the information discussed by Madison before the County Commission, specifically advising that "…we are investigating to find out how that [text] was disseminated to Mr. Madison."

30. Plaintiff was provided a standardized form advising him of his *'Garrity'* rights[1] that he was required to sign, indicating to the Plaintiff that the meeting was in fact an administrative interview.

31. Plaintiff, concerned regarding the unannounced nature of the interview and desiring to create a record, surreptitiously recorded the meeting.

[1] Derived from *Garrity v. New Jersey*, 385 U.S. 493 (1967).

32. Undisclosed to the Plaintiff, the interview was also being surreptitiously recorded by the agency.[2]

33. Because Plaintiff, by virtue of his rank as Captain, is a command staff member, and was recording the interview for the purpose of creating a record, said action is unequivocally in compliance with the policy of the Clayton County Sheriff's Office.[3]

34. During the interview, Plaintiff was questioned concerning his receipt of the May 15th text from the Sheriff, and his actions after having received it.

35. Plaintiff admitted to having received the text, forwarding it to his personal cell phone, and sharing it with others.

36. Additionally, Chief Deputy Green noticed the Plaintiff was recording the interview; this then became additional pretext for continued investigation and the placement of Plaintiff on unpaid administrative leave.

---

[2] This recording was obtained through open records and is attached as Exhibit G.

[3] *See* Clayton County Sheriff's Office Policy 07.30, attached as Exhibit B. While Clandestine Recordings are generally disallowed, the policy contains the following exclusion: "Recordings of conversations that are made by **Command Staff personnel** or Internal Affairs for the **purpose of establishing a record** of an administrative investigation, hearing, **or employee interview**, are allowed." (emphasis added).

37. Plaintiff was placed on unpaid administrative leave without pay, without being first provided specific notice of the potential disciplinary charges against him, or any opportunity to respond.[4]

38. Despite being on unpaid leave, Plaintiff was required to remain available to the Sheriff's Office, in what amounted to a perpetual on-call status.[5]

39. The impropriety of the placement of Plaintiff on unpaid administrative leave was brought to the attention of Defendant by counsel for Plaintiff, though Defendant's counsel, Mr. Mann.

40. Rather than correcting the conduct, Defendant forced Plaintiff to remain in an unpaid leave status; in order to retain income, Plaintiff was further forced to utilize his earned leave time.

41. On July 2nd, Plaintiff provided a compelled written statement[6] to Defendant through Major Roscoe. Plaintiff had still not been provided any official notice of alleged disciplinary charges against his conduct.

42. In his written statement, prepared with the assistance of counsel, Plaintiff again pointed out the impropriety of having been placed on unpaid administrative leave and the failure of the agency to provide him notice of the specific disciplinary charges that were being considered against him.

---

[4] *See* Exhibit C, Notice of Administrative Leave Without Pay.
[5] *Id.*
[6] *See* Exhibit D, Internal Affairs Statement of Plaintiff.

43. On July 15th, over a month after his placement on unpaid administrative leave, Plaintiff was provided notice of a pre-disciplinary hearing set to occur on July 17th, which set out two proposed violations of Sheriff's Office policy: § 07.30, Prohibition Against Clandestine Recordings, and § 02.07, Confidentiality of Sheriff's Office Matters.[7] This was the first time Plaintiff had been provided with notice of the specific policies he was alleged to have violated.

44. The proposed policy violations were pretext for retaliation by the Defendant against the Plaintiff for his protected speech.

45. As to the Prohibition Against Clandestine Recordings, Plaintiff met a clear exclusion within the policy allowing Command Staff members to surreptitiously record administrative interviews for the purpose of creating a record.[8]

46. As to the policy concerning confidentially of Sheriff's Office Matters, the subject matter of the Plaintiff's speech, pertaining to the personal request of the Defendant concerning matters outside of his official duties as Sheriff, in a manner discoverable under the Georgia open records act, was not in any way, either a Sheriff's Office matter, or confidential.

---

[7] *See* Supra n. 3, and Exhibit E, Clayton County Sheriff's Office Policy § 02.07.
[8] *See* Supra n. 3.

47. To any degree that Plaintiff could be construed to have violated these policies, such policies, as applied, served as an unlawful restraint on his free speech in violation of the First Amendment of the United States Constitution and were subsequently utilized to retaliate against the Plaintiff for that speech.

48. During the disciplinary hearing held on July 17th, Plaintiff provided a written response to the disciplinary charges leveled against him, dispositively showing that he had not violated the policies of the Clayton County Sheriff's Office through his actions.[9]

49. Despite this clear showing, Defendant retaliated against the Plaintiff's exercise of protected speech under the pretext of discipline by depriving him of his employment,[10] creating both monetary and non-monetary damages.

50. Defendant's retaliatory dismissal of Plaintiff was reported by Defendant to the Georgia Peace Officer Standards and Training Council ("P.O.S.T."), which has subsequently launched an investigation pursuant to their rules, potentially putting the Plaintiff's Georgia Peace Officer certification in jeopardy.

51. Plaintiff received notice of P.O.S.T. investigation on August 3, 2026.[11]

---

[9] *See* Exhibit F, Employee Response.
[10] *See* Exhibit H, Termination Notice.
[11] *See* Exhibit I, Notice of P.O.S.T. investigation.

52. Regardless of outcome, the record of P.O.S.T. investigation caused by Defendant's actions will remain as a permanent and public record of the Plaintiff's dismissal, causing continuing and irreparable harm to the Plaintiff.

53. On information and belief, Defendant has, in a similar way, retaliated against others involved in the same incident.

## COUNT I
## Retaliation for Exercise of First Amendment Free Expression under 42 U.S.C. § 1983

54. Plaintiff incorporates all allegations set forth above as if set forth here at length.

55. Mr. Barrett engaged in constitutionally protected speech on or about May 15th when, after receiving a text message from Defendant Allen wherein Defendant Allen texted "I need a Deputy to pull security while I run the perimeter," Mr. Barrett made a screenshot of the text and forwarded the same to his personal cell phone, then forwarded the screenshot to other individuals while off duty, with the message "Detail for a run?" which included a 'laughing face' emoji.

56. This Speech, made from Plaintiff's personal cell phone to persons that included both employees of the Sheriff's Office as well as non-employees,

was made in his personal capacity, and involved a matter of public concern, namely the expenditure of taxpayer funds.

57. Plaintiff's normal duties within the Sheriff's Office consisted of supervision of specialized patrol units, and did not include responsibility for the investigation or prosecution of public corruption or malfeasance.

58. As the subject of the Plaintiff's speech concerned matters not within the Defendant's official duties as Sheriff, and which would have otherwise been available to the public under the Georgia Open Records Act,[12] the agency had no cognizable interest in censoring Plaintiff's speech that would outweigh the Plaintiff's First Amendment right in making such speech.

59. The placement of the Plaintiff on unpaid administrative leave for over a month, without prior notice of any proposed disciplinary charges or opportunity to respond, the forced taking of the Plaintiff's earned leave time for income, followed by the completion of a pretextual investigation culminating in discipline for alleged policy violations which were also pretextual, were conducted by the Defendant as retaliation for the Plaintiff's protected speech, and the viewpoints expressed therein.

60. The viewpoints of the Plaintiff's protected speech was the 'but for' cause of the retaliatory actions of the Defendant against the Plaintiff.

---

[12] O.C.G.A. § 50-18-70, *et seq.*

61. Defendant's conduct in this matter would deter a person of ordinary firmness from the exercise of First Amendment rights.

62. In fact, the deterrence of similar protected speech in the future by employees of the Sheriff's Office was, in addition to the retaliation exacted against the Plaintiff, an apparent goal of Defendant's conduct.

63. Monetary relief alone will not fully recompense Plaintiff for this continuing and irreparable injury.

64. Plaintiff seeks injunctive relief requiring Defendant to:

(1) cease his unlawful practice of utilizing the apparatus of his official office, under color of law, to censor and retaliate against protected speech of Plaintiff and others that he deems negative towards himself under the guise of administrative investigations and discipline;

(2) Restore to Plaintiff his employment and all rights and benefits associated with it;

65. Additionally, Plaintiff seeks a declaration that the retaliatory practices described above violates his First Amendment rights.

66. Plaintiffs seek a declaration that the acts described above violate the First Amendment, and specifically requests that the Court declare that the

retaliatory imposition of discipline by the Defendant in the manner described, based on viewpoint, violates the First Amendment.

67. Plaintiff seeks a declaration that Clayton County Sheriff's Policy §§ 07.30, 02.07, as applied by the Defendant against the Plaintiff in this matter, violates the First Amendment.

68. Defendant's actions constitute direct attacks on the protected speech of Mr. Barrett and chill the speech of the citizenry more broadly.

69. Defendant violated, and continues to violate, a clearly established constitutional right of Plaintiff.

70. Because Plaintiff has suffered damages through the conduct set forth above, he seeks nominal damages in the amount of $72.00 against Defendant in his individual capacity.

WHEREFORE, Plaintiff respectfully request this court:

A. Assume jurisdiction over this action;

B. Hold a jury trial on all issues so triable;

C. Award nominal damages to Plaintiff against Defendant in his individual capacity in an amount of $72.00 or any other amount to be determined by jurors;

D. Award reasonable attorney's fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law;

E. Enter the preliminary injunctive relief, requested in the concurrently filed motion for preliminary injunction, and schedule a hearing for the same as soon as reasonably practicable;

F. Declare the actions of Defendant Allen, including the retaliatory imposition of discipline against the Plaintiff, to be view-point based retaliation in violation of the First Amendment;

G. Enjoin the Defendant's unlawful practice of utilizing the apparatus of his office, under color of law, to affect retaliatory censorship of Plaintiffs' statements and actions and enjoin the Defendant from doing so in the future, against Plaintiff and others;

H. Enter a mandatory injunction requiring Defendant to restore to Plaintiff his employment and all benefits associated with it;

I. Award such other and further relief as this Court deems just and proper.

Respectfully submitted this this 10th day of August, 2026.

**LORUSSO LAW FIRM P.C.**
1827 POWERS FERRY ROAD SE
BUILDING 8, SUITE 200
ATLANTA, GA 30339
(770) 644-2378
ken@lorussolawfirm.com
lance@lorussolawfirm.com

*/s/ Ken Davis*
KEN DAVIS, ESQ.
GEORGIA BAR NO. 705045

*/s/ Lance J. LoRusso*
LANCE J. LORUSSO, ESQ.
GEORGIA BAR NO. 458023
*Counsel for Plaintiff*

Docusign Envelope ID: 3E64863D-64E4-8332-8172-A9A2EA378EC9


UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JASON BARRETT<br><br>Plaintiff,<br><br>v.<br><br>LEVON ALLEN, *in his official and individual capacity,*<br><br>Defendant. | No.: ________________ |

**VERIFICATION OF JASON BARRETT**

I, Jason Barrett, am a plaintiff in this action and fully familiar with the facts related in this Complaint and have personal knowledge of the same. I have read the complaint and understand its contents. After reviewing the complaint, I verify that all allegations contained therein are true to the best of my knowledge.

Pursuant to 28 U.S.C. §1746, I verify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 10, 2026.

_____________________________
Jason Barrett

## DISCLOSURE OF USE OF ARTIFICIAL INTELLIGENCE (AI)

This document was generated with the assistance of Westlaw CoCounsel. I hereby certify under penalty of perjury that, despite reliance on an AI tool, I have independently reviewed this document to confirm accuracy, legitimacy and use of good and applicable law, pursuant to Rule 11 of the Federal Rule of Civil Procedure.

Respectfully submitted this 10th day of August, 2026.

*/s/ Ken Davis*
KEN DAVIS, ESQ.
GEORGIA BAR NO. 705045

*/s/ Lance J. LoRusso*
LANCE J. LORUSSO, ESQ.
GEORGIA BAR NO. 458023

*Counsel for Plaintiff*

**LORUSSO LAW FIRM P.C.**
1827 POWERS FERRY ROAD SE
BUILDING 8, SUITE 200
ATLANTA, GA 30339
(770) 644-2378
ken@lorussolawfirm.com
lance@lorussolawfirm.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing COMPLAINT has been prepared with a computer using 14-point Times New Roman font in compliance with Local Rule 5.1B.

Submitted this 10th day of August, 2026,

**LORUSSO LAW FIRM P.C.**

*/s/ Ken Davis*
KEN DAVIS, ESQ.
GEORGIA BAR NO. 705045

*/s/ Lance J. LoRusso*
LANCE J. LORUSSO, ESQ.
GEORGIA BAR NO. 458023

*Counsel for Plaintiff*

1827 POWERS FERRY ROAD SE
BUILDING 8, SUITE 200
ATLANTA, GA 30339
(770) 644-2378
ken@lorussolawfirm.com
lance@lorussolawfirm.com